# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**SHERI LOWE,**
**Claimant Below, Petitioner**

**FILED**

July 31, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 19-0295** (BOR Appeal No. 2053441)
(Claim No. 2014013746)

**NEW RIVER HEALTH ASSOCIATION, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Sheri Lowe, by Counsel Reginald Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). New River Health Association, Inc., by Counsel Steven Wellman, filed a timely response.

The issues in this appeal involve medical treatment, compensability, and temporary total disability benefits. On August 25, 2017, the claims administrator denied a request for the authorization of a left knee posterolateral corner reconstruction and consideration of an allograft. On October 23, 2017, the claims administrator denied the addition of left knee tear of the anterior cruciate ligamentand left knee pain to the claim and also denied Ms. Lowe initial temporary total disability benefits. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's Orders on September 25, 2018. This appeal arises from the Board of Review's Final Order dated February 22, 2019, in which the Board affirmed the September 25, 2018, Order of the Workers' Compensation Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Lowe, a licensed practical nurse, sustained a left knee injury as the result of a slip and fall incident while working for New River Health Association, Inc., on October 31, 2013. She sought treatment with Joni Walker, PA-C, on November 1, 2013. She was diagnosed with knee joint pain and prescribed ibuprofen and heat. An Employees' and Physicians' Report of Occupational Injury form was signed on November 8, 2013. The physician's section of the form

1

was signed by Ms. Walker, who indicated that Ms. Lowe had suffered an occupational injury. However, Ms. Walker did not indicate that Ms. Lowe was temporarily and totally disabled for four or more days. Ms. Lowe was referred to William C. LaCost, M.D., an orthopedist. Dr. LaCost made a diagnosis of internal derangement of the left knee on December 2, 2013. Dr. LaCost ordered an MRI of the left knee. The claims administrator authorized the approval for the left knee MRI on December 4, 2013.

Ms. Lowe underwent an MRI on December 17, 2013, performed by Mercedes Ramas, M.D. Dr. Ramas reported that there was evidence of fraying of the undersurface of the posterior horn of the medial meniscus. There was also Grade 2-3 chondromalacia of the patella. All ligaments were intact and there was no evidence of fracture or dislocation.

Ms. Lowe was seen by Dr. LaCost on January 8, 2014, to discuss the results of her diagnostic testing. Dr. LaCost diagnosed her with internal derangement of the left knee. He injected her left knee with a corticosteroid injection. She was advised that if the instability continued, she should consider a diagnostic arthroscopy.

On April 30, 2014, authorization was granted by the claims administrator for Ms. Lowe to be seen by Robert Kropac, M.D. Dr. Kropac saw Ms. Lowe on May 14, 2014, and made a diagnosis of strain left knee superimposed on patellofemoral chondromalacia, rule out internal derangement of the left knee. Dr. Kropac also referred Ms. Lowe to Philip Branson, M.D., an orthopedic surgeon, for a diagnostic arthroscopy.

Ms. Lowe underwent an independent medical evaluation by Joseph E. Grady II, M.D., on June 12, 2014. Dr. Grady made diagnoses of left knee arthralgia with reported fraying of the medial meniscus and patellar chondromalacia. He stated that Ms. Lowe had some structural abnormality of the left knee, and he could not exclude the possibility that there was some internal derangement secondary to her fall on October 31, 2013. Dr. Grady indicated that surgery was a reasonable option with regard to Ms. Lowe's knee. He noted that she continued to work and would be at her maximum degree of medical improvement if, for whatever reason, the arthroscopic surgery was not performed.

On June 22, 2014, Ms. Lowe was seen at Memorial Hospital. She indicated that her knee had given out, causing her to fall on the concrete. She also complained of right shoulder pain and left ankle/foot pain. An x-ray examination of her shoulder did not reveal a fracture or dislocation. An x-ray of her left ankle and foot also revealed no fractures. She was diagnosed with ankle sprain/strain and strain of the rotator cuff capsule. She was advised to rest and elevate the affected areas.

Ms. Lowe was examined by Dr. Branson on September 18, 2014, in relation to her left knee instability. She reported to Dr. Branson that since the injury she had multiple episodes of her knee giving way with minimal provocation. Dr. Branson indicated that her MRI was unremarkable, but on examination he found significant left knee instability. He stated that the MRI suggested a possible chronic anterior cruciate ligament ("ACL") tear. Dr. Branson recommended a repeat MRI of the left knee and speculated that Ms. Lowe would most likely need reconstruction.

2

Ms. Lowe underwent an additional left knee MRI at Princeton Community Hospital on October 11, 2014. The MRI was interpreted as revealing minimal intrameniscal degenerative changes of the posterior horn of the medial meniscus but no tear. A partial tear of the ACL was noted. No abnormal signal was noted within the bone. After reviewing the second MRI, Dr. Branson, on October 21, 2014, diagnosed Ms. Lowe as suffering from ACL instability of the left knee and recommended reconstruction, evaluation of possible posterolateral corner reconstruction, and consideration of an allograft.

In correspondence dated November 10, 2014, Dr. Grady responded to questions regarding Ms. Lowes's condition. Dr. Grady stated that the findings of the MRI of December 17, 2013, could represent chronic degenerative changes and could also be post-traumatic in nature. He indicated he could not exclude the possibility that Ms. Lowe had experienced a blunt trauma when she slipped and fell on October 31, 2013. He further stated that there was a significant change that developed following the intervening episode of September 14, 2014. Dr. Grady stated that he could not specifically associate the ACL reconstruction with the injury of October 13, 2013, although the treatment that Ms. Lowe had received to this point had been reasonable and necessary. He found that she reached her maximum degree of improvement.

On November 19, 2014, the claims administrator denied the request for authorization for reconstruction, an evaluation for possible posterolateral corner reconstruction, and consideration of an allograft. Authorization was denied on the basis that an addendum report had been obtained by the claims administrator from Dr. Grady placing Ms. Lowe at her maximum degree of medical improvement. Ms. Lowe protested the claims administrator's decision.

Ms. Lowe was deposed on February 26, 2015. She testified that on October 31, 2013, she was cleaning a treatment room and some cleaning disinfectant must have been on the floor because her foot slipped and she fell forward. Her left knee twisted and gave out. She testified that it was her understanding that her x-rays were negative for a bone injury. She sought further treatment with Dr. LaCost due to her pain and swelling. When Dr. LaCost left the area, she transferred her care to Dr. Kropac. Dr. Kropac referred her to Dr. Branson, who wanted to perform reconstruction surgery. Because her claim had been denied, there was nothing that she could do regarding workers' compensation. Ms. Lowe testified that her knee was extremely unstable and would buckle without any notice or activity. She estimated that her knee had given out approximately eight times a month since her injury of October 31, 2013. She stated that her knee gave out while she was walking on a flat surface and she twisted her ankle and rolled forward, putting a strain on her right shoulder. She testified that the accident was precipitated by her left knee giving away, causing her to fall. Ms. Lowe was deposed for a second time on October 6, 2015. She testified that she sustained a right shoulder injury while working on February 9, 2012. She slipped on water on the floor and fell into a countertop. She maintained that she mailed an Injury Report Form to her employer.

Following a period of litigation over whether this claim was or was not timely filed, the Board of Review remanded the claim for a ruling on the merits of compensability and for a new ruling on the request for a left knee posterolateral corner reconstruction and consideration of an

allograft. A claims administrator Order dated August 25, 2017, denied a left knee posterolateral corner reconstruction and consideration of an allograft. Ms. Lowe filed a protest and the Office of Judges assumed jurisdiction over the issue.

In a letter to Counsel dated January 11, 2018, Dr. Branson stated that he had examined Ms. Lowe and maintained that she has a consistent history of instability since the time of her compensable injury on October 31, 2013. Dr. Branson stated that the physical examination findings suggested possible posterolateral corner injury with recurvatum of the knee and decrease in compliance with the leg and internal rotation suggesting posterolateral corner injury. He further stated that Ms. Lowe suffered a significant injury to her left knee including ACL and possible posterolateral corner injury.

Ms. Lowe submitted a report of Dr. Branson dated January 25, 2018. Dr. Branson noted that Ms. Lowe had undergone two ACL reconstructions in the past for her right knee. He stated that the right knee was now giving way on a regular basis with significant pain with ambulation. He reported significant arthritis, subchondral bone edema, and loss of cartilage in all three compartments of the right knee. X-rays and an MRI of the right knee were reported to show end stage arthritis. Dr. Kropac recommended total knee replacement. The left knee was not mentioned in the report.

Ms. Lowe underwent an independent medical evaluation by Prasadarao. Mukkamala, M.D., on May 29, 2018. After examining her, Dr. Mukkamala diagnosed Ms. Lowe with a sprain/contusion of her left knee. He believed that she had reached her maximum degree of medical improvement from the compensable injury of October 31, 2013. Dr. Mukkamala stated that no further treatment was needed and the recommendation for surgery for the left knee was not required to treat the compensable injury. He stated that Ms. Lowe had experienced a subsequent fall in July 2014 and the subsequent MRI showed a partial tear of the ACL. Pursuant to the American Medical Association's, *Guides to the Evaluation of Permanent Impairment*, (4th ed., 1993), Dr. Mukkamala found no impairment for range of motion. He recommended 3% whole person impairment for mild laxity, which he related to the subsequent fall in 2014.

The MRIs were reviewed by Johnsey L. Leef III, M.D., a radiologist, who issued a report on June 5, 2018. Dr. Leef reported that the December 2013 MRI showed no tears of the ACL and all collateral ligaments were intact. He opined that these studies showed mild degenerative changes but the menisci were intact, with no evidence of internal derangement. The October 2014 MRI, however, showed a partial tear of the ACL at the femoral attachment.

The Office of Judges issued its decision on September 25, 2018. The Office of Judges concluded that Ms. Lowe sustained a compensable left knee injury on October 31, 2013. However, it was found that Ms. Lowe failed to demonstrate that she was temporarily and totally disabled immediately following her compensable injury because she continued to work thereafter. The Office of Judges concluded that a preponderance of credible medical evidence fails to demonstrate that the diagnoses of tear of the anterior cruciate ligament of the left knee or left knee pain should be included as compensable components of the claim. The Office of Judges reasoned that while such treatment may be reasonable and necessary, it is unclear whether or not such is in fact related

4

to the compensable injury. Accordingly, the Office of Judges concluded that the preponderance of credible medical evidence fails to demonstrate that the procedure of a left knee posterolateral corner reconstruction and consideration of an allograft is related to the compensable injury. The Office of Judges also stated that the record suggests the possibility of non-occupationally-related degenerative changes in the left knee as the possible causative agent. The Office of Judges affirmed the August 25, 2017, and October 23, 2017, Orders of the claims administrator. On February 22, 2019, the Board of Review adopted the findings of facts and conclusions of law of the Office of Judges and affirmed the Order.

After review, we agree with the decision of the Board of Review. In its September 25, 2018, Order, the Office of Judges held that it was more likely than not that posterolateral corner reconstruction with possible allograft was neither medically related nor reasonably required to treat the compensable injury of October 31, 2013. Likewise, the Office of Judges also found that Ms. Lowe failed to establish a causal relationship between the compensable injury and the tear of the ACL, and initial temporary total disability benefits were properly denied, as Ms. Lowe continued working following her compensable injury. The Office of Judges' decision, as affirmed by the Board of Review, is fully supported by the evidence of record.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 31, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison